# United States Court of Appeals

*for the*

# Fifth Circuit

Case No. 25-60188

GLEN A. HARDWICK,

*Petitioner,*

v.

NATIONAL TRANSPORTATION SAFETY BOARD; CHRIS ROCHELEAU, Acting Administrator, Federal Aviation Administration,

*Respondents.*

ON APPEAL FROM THE NATIONAL TRANSPORTATION SAFETY BOARD IN CASE NO. SE-30824

## BRIEF FOR PETITIONER

EDWARD A. ROSE, JR., ESQ.
*Attorney for Petitioner*
3027 Marina Bay Drive, Suite 208
League City, Texas 77573
(713) 581-6029
edrose@edroseattorneycpa.com

CP COUNSEL PRESS    (800) 4-APPEAL • (813170)

# I.  CERTIFICATE OF INTERESTED PERSONS

I hereby certify that the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

Glen A. Hardwick, *Petitioner*

Edward A. Rose, Jr., Esq., *Attorney for Petitioner*

National Transportation Safety Board, *Respondent*

Chris Rocheleau, Acting Administrator, Federal Aviation Administration, *Respondent*

/s/ Edward A. Rose, Jr.,

Counsel for Petitioner

## II.   STATEMENT REGARDING ORAL ARGUMENT

Petitioner, Glen Hardwick, believes Oral Argument would be necessary to determine if the sanction of a One Hundred Fifty (150) day suspension of his airline transport certificate was appropriate based on the facts and circumstances leading to an administrative violation that created no imminent hazard to public safety.

# III. TABLE OF CONTENTS

**Page**

I.    CERTIFICATE OF INTERESTED PERSONS.............................i

II.   STATEMENT REGARDING ORAL ARGUMENT .......................ii

III.  TABLE OF CONTENTS ...........................................................iii

IV.   TABLE OF AUTHORITIES......................................................iv

V.    JURISDICTIONAL STATEMENT...............................................1

VI.   STATEMENT OF ISSUES PRESENTED FOR REVIEW .............2

VII.  STATEMENT OF THE CASE ....................................................4

VIII. STATEMENT OF THE FACTS .................................................5

IX.   SUMMARY OF THE ARGUMENT ..........................................12

X.    STANDARD OF REVIEW ......................................................16

XI.   ARGUMENT.........................................................................19

    1.   The National Transportation Safety Board erred in
       denying Petitioner's appeal and affirming the
       Administrative Law Judge's findings of fact and
       law resulting in the Petitioner's suspension of his
       airline pilot certificate for 150 days ..............................19

    2.   The Sanction is Disproportionate to the Nature of
       the Violation ................................................................23

XII.  CONCLUSION ....................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Jifry v. FAA,*
 370 F.3d 1174 (D.C. Cir. 2004) ...............................................17

*Pasternack v. NTSB,*
 596 F.3d 836 (D.C. Cir. 2010) ...............................................19

*Taylor v. Huerta,*
 723 F.3d 210 (D.C. Cir. 2013) ...............................................18

*Throckmorton v. NTSB,*
 963 F.2d 441 (D.C. Cir. 1992) ...............................................18

*Van Dyke v. NTSB,*
 286 F.3d 594 (D.C. Cir. 2002) ...............................................17

**Statutes & Other Authorities:**

5 U.S.C. § 556 ...............................................................................16

5 U.S.C. § 557 ...............................................................................16

5 U.S.C. § 706(2)(a) ...........................................................16, 17, 18

5 U.S.C. § 706(2)(e) .....................................................................18

49 U.S.C. § 1153............................................................................. 1

49 U.S.C. § 44709(f)...................................................................... 1

49 U.S.C. § 46110(a) ..................................................................... 1

49 U.S.C. § 46110(c) .....................................................................18

14 C.F.R. § 45.21 ...........................................................................13

14 C.F.R. § 45.21(a) ...................................................................... 4

14 C.F.R. § 45.23(a) ...................................................................... 4

14 C.F.R. § 91.7(a) ........................................................................ 4

14 C.F.R. § 91.203(a)(1) ............................................................... 4

49 C.F.R. § 821.64(a) ...................................................................... 1

Federal Rule of Appellate Procedure Rule 15................................. 1

## V.    JURISDICTIONAL STATEMENT

This is a petition for judicial review from the NTSB's Opinion and Order No. EA-5995 dated February 19, 2025 in case number SE-30824 denying Respondent's appeal of the Administrative Law Judge's initial decision suspending Respondent's airline transport pilot certificate for a period of 150-days which this Court has jurisdiction pursuant to 49 U.S.C. §§ 1153, 44709 (f), 49 U.S.C. § 46110(a) and 49 C.F.R. § 821.64(a).

Petitioner filed his PETITION FOR REVIEW (TAB 1) on April 14, 2025. This appeal is timely under Rule 15 of the Federal Rules of Appellate Procedure.

1

## VI.   STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.   **Did the National Transportation Safety Board err in denying Petitioner's appeal and affirming the Administrative Law Judge's findings of fact and law resulting in the Petitioner's suspension of his airline transport pilot certificate for 150-days?**

2.   **Did the Agency consider all mitigating factors in its decision especially when the FAA issued a Condition Notice which stated "the findings are not considered to be an imminent hazard to safety" yet the Administrative Law Judge ruled the pilot's actions were deliberate and reckless?**

3.   **Is there a regulation which clearly states that if an application for an N- number change of an aircraft is denied than the aircraft cannot revert back to the N-number before the application was filed with the FAA that would provide proper notice to the owner and pilot of the aircraft?**

4.  **Is the agency decision arbitrary and capricious based on its decision not being based on consideration of all relevant facts in this unintentional error with one letter of a tail number of the aircraft?**

5.  **Did the flight with the incorrect tail number, N550ME pose a significant safety risk to aviation even though the correct tail number was N550MK when both of these tail numbers pertained to the same Cessna Citation 550 aircraft?**

6.  **Was the 150-day suspension excessive since the violation was not intentional, egregious, nor impacting public safety?**

7.  **Is the 150-day suspension inconsistent with the principle of proportionately, which requires that sanctions be tailored to the severity of the violation and its impact on public safety?**

## VII. STATEMENT OF THE CASE

On April 27, 2020, the FAA issued an Order of Suspension of Petitioner's Airline Transport Pilot (ATP) Certificate for a period of One-Hundred (150) days for alleged violations of 14 C.F.R. § 45.21(a), 45.23 (a), 91.203(a)(1), and 91.7(a) for a flight arriving at Dwight D. Eisenhower National Airport (KICT) on October 15, 2019 and on a subsequent flight departing KICT on October 15, 2019 when Petitioner served as pilot in command of N550ME.

The FAA alleged that at the time of the flights the aircraft had been modified to read N550ME. The FAA alleged the tail number should have read N550MK. N550MK did not have a current and valid airworthiness certificate but N550ME did have a current and valid airworthiness certificate. These tail numbers pertain to the same aircraft, a Cessna Citation 550 which possessed an airworthiness certificate under N550ME but not N550MK.

On May 14, 2020, Petitioner filed a Notice of Appeal from the Administrator's Order of Suspension issued on April 27, 2020. On May 18, 2020, the Administrator filed the Order of Suspension as the Complaint in this matter. Petitioner filed his answer on May 28, 2020.

4

A hearing was held via Remote Video commencing October 18, 2022 and ending on October 20, 2022. On October 20, 2022, the ALJ provided his Decision affirming the FAA's proposed suspension of Petitioner's ATP Certificate for One Hundred Fifty (150) days. This decision disregarded key evidence, misinterpreted evidence, and made erroneous rulings on evidence and credibility. Petitioner timely appealed the ALJ's decision on October 28, 2022 and filed his Appellant's Brief on December 8, 2022. The FAA responded with its Administrator's Reply brief on January 17, 2023.

The NTSB handed down its decision on the matter, affirming the ALJ's rulings, on February 19, 2025. Petitioner now looks to this Court for judicial review of the administrative agency's decision which upheld the suspension of his airline pilot certificate for One-Hundred Fifty (150) days.

## VIII.   STATEMENT OF THE FACTS

On October 14, 2019, Respondent Glen A Hardwick met with Mike King the owner of Ascent Aviation LLC which owns Cessna Citation 550-0097 at its hanger at Pearland Airport (KLVJ). The purpose of the meeting was for Glen Hardwick to perform an

extensive flight manual preflight to ensure airworthiness, familiarize himself with Citation N550ME since it had been modified with "Williams Engines", and to be advised as to any procedures Mike King wanted Glen Hardwick to follow concerning the flight the following day. (CR0468-0470).

During the preflight inspection Glen Hardwick observed a "Certificate of Aircraft Registration (AC 8050-3)" for Ascent Aviation LLC and a "Standard Airworthiness Certificate" which both pertained to Cessna Citation 550-0097 and tail number registration of N550ME. (CR1127-1128).

While continuing his preflight with Mike King, Glen Hardwick noticed that the right-side aircraft markings had been modified from N550MK to N550ME. (CR1143).

Prior to this, Jack Montieth testified that on September 25, 2019 he flew the same aircraft. When he did the preflight inspection he noticed that the tail number N550MK did not match the documents in the aircraft and was not the same as the Airworthiness Certificate. He stated that he corrected the tail number from N550MK to N550ME using black vinyl tape. (CR0453-0458).

Glen Hardwick inquired why the modification was made and was told by Mike King that he had made a registration change using the FAA AC Form 8050-64 (CR1129) and had painted his new registration N550MK only to have the FAA deny his request for a new Airworthiness Certificate from the Houston, Texas FSDO. (CR1132-1133).

Mike King represented that since the July 3, 2019 "assignment of special registration numbers" form (CR1129) was no longer valid, the tail number had to be changed back to N550ME since that tail number had a valid registration certificate and air worthiness certificate for the same serial numbered aircraft. Mike King stated he was advised by the Houston FSDO to change the tail number back to N550ME after he received a letter from Ramon Reyes from the Houston FSDO. (CR1132-1133).

Glen Hardwick relied on the representations of the owner of the aircraft, filed a flight plan, and landed at Wichita Airport (KICT) on October 15, 2019, and taxied in and parked on the Signature Ramp. He shut down and secured the aircraft and noticed two (2) FAA Safety Inspectors. He opened the aircraft door and was reaching for his

license and medical just as ASI Keith Allen was asking for them. He asked Glen Hardwick the purpose of his flight and Glen Hardwick told him he was putting some hours on the airplane and was going to visit Flight Safety and maybe check on some maintenance. ASI Keith Allen saw that Glen Hardwick was flying single pilot and asked if he had his waiver. Glen Hardwick initially could not find his waiver (he later discovered the Single Pilot Waiver was in an outside pocket sleeve of his flight bag where he had not thought to look).

Inspector Sam Ragin addressed Glen Hardwick and said it appeared there was a problem with the aircraft registration since the external aircraft registration markings did not match what ASI Allen thought his information said it should be. This made no sense to Glen Hardwick since the Registration Certificate and Air Worthiness Certificate indicated N550ME. Glen Hardwick then proceeded to go to Flight Safety utilizing the courtesy car.

Glen Hardwick then returned soon to Signature FBO. He was met by the Wichita ASI's who informed him that he was flying an illegally registered airplane. They all went to the aircraft and obtained the documents. Among the assorted papers there was a

8

Certificate of Airworthiness, an Aircraft registration for N550ME and an Assignment of Special Registration form for N550MK dated July 3, 2019. There was no Aircraft Registration (AC 8050-3) for N550MK. ASI Ragin remarked that Glen Hardwick was flying an illegally registered airplane since the Assignment of Special Registration form indicates he should be flying as N550MK. Glen Hardwick disagreed and said that the Assignment of Special Registration Numbers form was invalid and was being carried to explain the modified tail markings to N550ME (CR1143). Glen Hardwick took the papers from ASI Ragin's hand and placed them back on the airplane. Inspector Ragin then allegedly gave Glen Hardwick a "white condition notice". At the hearing since it was three (3) years after the incident, Glen Hardwick could not remember if he was given the "white condition notice". Usually, the more severe, a red condition notice, also known as a "red tag", is affixed to the aircraft so the pilot sees the "red tag" before flight operation. This places the pilot on notice that the aircraft is not in condition to safely operate since it is an imminent hazard to safety and for the pilot not to operate the aircraft. A white condition

notice is not considered an imminent hazard to safety and can be characterized as an administrative violation.

Glen Hardwick then went back to Flight Safety. He called Mike King of Ascent Aviation LLC and after discussions with him, Mike King told Glen Hardwick to bring the aircraft home since he was working with the Houston Flight Standards District Office to fix the paperwork issues. Prior to returning to Signature Flight Support, Glen Hardwick went online and went to the official FAA Air Registry site and looked up registration information for N550ME and it showed it was the registration number for a Cessna Citation 550 for Ascent Aviation LLC for Cessna Citation 550-0097. (CR1130). This is what Glen Hardwick stated he saw online that day and this document was also obtained from the FAA Registry when Glen Hardwick received a letter from the FAA (March 21, 2020) pursuant to the alleged violation. Glen Hardwick then looked up the registration for N550MK online and the information showed a Cessna 185F model deregistered to Canada. (CR1131). This is what Glen Hardwick stated he saw online that day and this document was also obtained when Glen Hardwick received the letter from the FAA (March 21,

2020). After checking registrations online, Glen Hardwick was convinced that the FAA inspectors had made an honest mistake in thinking Cessna Citation 550-0097 should be registered as N550MK since the official FAA Air Registry records said it should be N550ME.

Glen Hardwick then returned to Signature and gave the car keys back to the customer service representative. She handed him a paper tag that she received from the Wichita Inspectors to give to Glen Hardwick.  At the same time a gentleman who had walked into the FBO behind him addressed him and said something like "are you my pilot to Houston? I am running late and I am in a hurry to get there"? Glen Hardwick then placed the white condition notice (CR1144-1145) in his flight bag and departed for Pearland. As a seasoned, experienced pilot with more than 15,000 flight hours, Glen Hardwick always knew an FAA "Do Not Fly" was a Red Tag that was to be attached to the aircraft. Since as the Pilot in Command Glen Hardwick had no authority to make any repairs, he left the Condition Report on Mike King's desk at his Pearland hanger.

On or about March 21, 2020, Glen Hardwick received a letter from the FAA concerning the above incident.

11

# IX. SUMMARY OF THE ARGUMENT

Petitioner Glen Hardwick is a professional pilot who depends upon his Airline Transport Pilot Certificate and skills for a living. On May 18, 2020 the Administrator suspended Petitioner's Airline Transport Certificate for 150 days for piloting an aircraft with an incorrect tail number which Petitioner reasonably believed was N550ME after reviewing all the documentation of the aircraft that was provided him. When the aircraft was ramp checked in Wichita, Kansas by FAA representatives they told him that the correct number was N550MK. Petitioner then checked the FAA website and when he keyed in N550MK the website stated that the tail number N550MK belonged to another aircraft which indicated "deregistered". Petitioner called the aircraft owner who stated he was working with the Houston FSDO on the inspection matter (CR0480). Petitioner was convinced that the correct aircraft tail number was N550ME because the FAA would not issue a new air worthiness certificate for tail number N550MK and the number would have reverted back to the original number of N550ME which had a valid airworthiness certificate. As stated previously, Petitioner also went online and

12

looked up registration information for Cessna Citation N550ME in the FAA Air Registry and it showed it was the correct registration number for a Cessna Citation 550 for Ascent Aviation LLC for Cessna Citation 550-0097. Petitioner also checked N550MK which showed the aircraft was a Cessna 185 that was de-registered, thus was convinced the correct tail number of the Cessna Citation he was flying was N550ME.

The FAA inspector issued a "Condition Notice" which stated "aircraft does not have the correct registration number on aircraft in accordance with 14 C.F.R. § 45.21." On the top of the Condition Notice it said "the items listed below are not considered to be an imminent hazard to safety". Petitioner did not review the Condition Notice since it was handed to him and not affixed to the aircraft which is the industry standard protocol for an unsafe aircraft. Petitioner then piloted the aircraft back to Pearland, Texas at the direction of the owner of the aircraft. The owner received a letter from the Houston Flight Standards Office stating that the owner "*should*" correct the findings rather than *"must"* correct the findings.

13

Additionally, another pilot, Scott Breeze, previously flew the aircraft with tail number N550MK and when the aircraft landed due to a decompression issue, the FAA inspector stated the aircraft should be N550ME and not N550MK and counseled him per the FAA records (CR1204, Record 4), so the FAA had already provided guidance on the proper tail number being N550ME which was the tail number when Glen Hardwick flew the aircraft. In this case Petitioner flew the aircraft as N550ME and was told by the Wichita FAA inspectors it should be N550MK which is completely opposite from what the Houston FAA Inspector stated to the previous pilot, Scott Breeze.

There are many mitigating factors such as reliance on the statements of the owner of the aircraft, the pre-inspection of the aircraft by the pilot, the absence of a regulation which clearly states that the aircraft cannot revert back to its N-Number before the application for change, the aircraft's previous N-number had a valid airworthiness certificate, the confusing letter sent by the Houston Flight Standards Office to the owner which said "it is *recommended*" that the tail number findings be corrected before flight, rather than

the term "*must* be corrected" and  the *inconsistent* sanction for a professional pilot. The sanction is excessive based on the unique facts of this case and especially since another pilot with a passenger flew the same aircraft with tail number N550MK, was told it should be M550ME, and was merely counseled, not suspended.

The FAA's charge to suspend Glen Hardwick's airline transport pilot certificate for 150 days, and the Administrative Law Judge and NTSB's affirmation of such suspension were clearly erroneous. The FAA's allegations that the Petitioner piloted an aircraft that was not airworthy is clearly erroneous since the same aircraft was involved with the confusion that the aircraft should have been N550MK versus N550ME which had a valid air worthiness certificate.

The FAA has flaunted and abused applicable laws and regulations by assuming every leased aircraft is an illegal charter and twists the facts to fit their desired outcome.

The FAA with its vague guidelines created fertile ground

for their questionable actions. The deference afforded such an agency should be bridled and not absolute to curb their questionable actions.

## X.   STANDARD OF REVIEW

Pursuant to 5 U.S.C. § 706(2)(a), this Court shall hold unlawful and set agency actions, findings, and conclusions which are found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law, (E) unsupported by substantial evidence in case subject to 5 U.S.C. §§ 556, 557 of this title or otherwise reviewed on  the record of an agency hearing provided by statute or (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court. In making the foregoing determinations, the Court shall review the whole record or those parts of it cited

16

by a party, and due account shall be taken of the rule of prejudicial error.

Where the scope of the Court's review of challenges to the agency's actions is limited to determining whether the actions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, 5 U.S.C.S. § 706(2)(A), under this standard, the court must consider whether those actions were based on a consideration of the relevant factors and whether there has been a clear error of judgment. *Jifry v. FAA*, 370 F.3d 1174, 1176 (D.C. Cir. 2004). The court must affirm the agency's findings of fact only if they are supported by "substantial evidence" and there is a rational connection between the facts found and the choice made, substantial evidence being considered to be such relevant evidence as a reasonable person might accept as proof of a conclusion. *Id.* If there is no substantial evidence to support the Board's reasoning, its order must be vacated. *Van Dyke v. NTSB*, 286 F.3d 594, 598 (D.C. Cir. 2002).

Review by a federal court of appeals of an order by the

NTSB is limited to determining whether the Board's decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, 5 U.S.C. § 706(2)(A), understanding that the Board's findings need only be supported by substantial evidence. *Id.* § 706(2)(E); *Taylor v. Huerta*, 723 F.3d 210, 212 (D.C. Cir. 2013). In reviewing a National Transportation Safety Board decision, a court is bound by the Administrative Procedure Act. 5 U.S.C. § 706(2)(A), which requires that it set aside agency findings unsupported by substantial evidence. *Throckmorton v. NTSB*, 963 F.2d 441, 442 (D.C. Cir. 1992). In reviewing FAA sanctions under this standard, the NTSB considers aggravating and mitigating factors and compares factually similar cases to determine whether the FAA's choice of sanction was appropriate. *Taylor*, 723 F.3d at 212. A court reviews decisions of the National Transportation Safety Board under the arbitrary and capricious standard and treats the Board's factual findings as conclusive if they are supported by the substantial evidence. 5 U.S.C. § 706(2)(A); 49 U.S.C.S. § 46110(c) (LexisNexis).

18

However, the court may uphold agency orders based on reasoning that is fairly stated by the agency in the order under review; therefore, if there is no substantial evidence to support the Board's reasoning, its order must be vacated. *Pasternack v. NTSB*, 596 F.3d 836, 837 (D.C. Cir. 2010).

## XI. ARGUMENT

**1. The National Transportation Safety Board erred in denying Petitioner's appeal and affirming the Administrative Law Judge's findings of fact and law resulting in the Petitioner's suspension of his airline pilot certificate for 150-days.**

Prior to flying the aircraft on October 15, 2019, Petitioner Glen Hardwick met with Mike King the owner of the aircraft, reviewed all the aircraft documents, and saw that the tail number of the aircraft was the same as the registration certificate and the airworthiness certificate. Glen Hardwick flew the aircraft based on his review of the documentation which showed the aircraft had the correct tail number. When he arrived in Wichita, Kansas he was met by FAA representatives who stated it was a "ramp check" who then inspected the

aircraft and noticed that the tail number had tape on it to show N550ME and not N550MK.

There was confusion as to what the tail number of the aircraft should be. Prior to flying the aircraft back to Pearland, Glen Hardwick checked the FAA registry which reflected that N550MK was deregistered. In his letter dated October 30, 2019 to the owner of the aircraft, Ramon Reyes of the Houston Flight Standards office stated, "It is recommended that all findings be corrected prior to operations". When asked why he stated *"recommended"* and not *"must",* he testified that he did not know why he used that language but meant it to comply even though he did not state in his letter that the findings "must" be corrected. (0397). This resulted in confusion since the word recommended does not mean must.

Additionally, On September 9, 0219, another pilot, Scott Breeze, flew the same aircraft and had to land due to a pressurization issue. The FAA inspector advised him that the aircraft is "currently registered as N550ME" and not N550MK". He was counseled by the FAA inspector since the aircraft had

N550MK as its tail number. (CR1204, Record 4). At his ramp inspection in Kansas the FAA inspectors stated the aircraft should be N550MK but with Scott Breeze the inspector stated the aircraft should be N550ME.

This entire situation occurred because the tail number was off by one (1) letter. N550ME versus N550MK. Regardless of whether the aircraft had N550ME or N550MK, that aircraft still had a valid airworthiness certificate. Additionally, FAA inspector Ragin testified that he stated "I marked on the Condition Notice I did <u>not</u> consider it to be an imminent hazard. I considered it to be an administrative item making the aircraft unairworthy". (CR0425). The aircraft was unairworthy but not due to any mechanical or serious flying issue.

The Administrative Law Judge in this matter appeared to be prejudicial to the Petitioner. In his ruling he stated "Based upon the relative motivation of the witnesses to fabricate information, the consistency of their testimony overall and the demeanor of the witnesses on the stand, I likewise assigned greater credibility to Inspector Allen's testimony regarding the

21

results of his FAA aircraft registry search on the date of the ramp inspection. I found Respondent's testimony in this regard to be unreliable" (CR0644). There was a difference in what petitioner found in the online FAA site, and what the inspector stated was the correct tail number. A copy of the Registration Certificate for N550MK which Petitioner previously sighted shows a Cessna A185F as "deregistered" (CR1131). This validates Petitioner's testimony but nothing was provided by the inspector other than his statement that the aircraft should be N550MK. This suggests the Administrative Law Judge was prejudicial in his rulings and the 150-day suspension which is a significant suspension period for a professional pilot which means he cannot generate any income for 150-days and would have to incur additional expenses to maintain currency requirements at the end of the suspension period.

A significant issue is that the FAA issued a "Condition Notice" which stated "The findings are not considered to be an imminent hazard to safety" yet the Administrative Law Judge ruled the pilot's actions were deliberate and reckless even

though the previous N-number had an Airworthiness Certificate, the aircraft was mechanically sound, and this was considered an "Administrative Error" and did not pose a significant safety risk since the same aircraft is used.

Another confusing issue is when an N-number change is denied, whether the aircraft reverts back to the original N-number. Nothing in the regulations specifically state that when the application for a new N-number is denied you cannot fly the aircraft until the application is accepted. This is further confirmed when the Houston Flight Standards Office stated "it is recommended" versus "must" correct the findings. A reasonable pilot would believe it reverts back if the application is denied until all the necessary paperwork is submitted.

### 2. The Sanction is Disproportionate to the Nature of the Violation

The sanction of a 150-day suspension is inconsistent with the facts of the case. The aircraft was flown in good faith and all that was stated on the "Condition Notice" was an administrative violation. As stated previously, when Scott

23

Breeze flew the aircraft the inspector gave him oral counseling that the aircraft should have been marked N550ME but not N550MK. When petitioner flew the aircraft, he received a 150-day suspension because the inspector stated the aircraft should have been marked N550MK and not N550ME. Scott Breeze was only provided oral counseling. Here we have a 150-day suspension. It is obvious the 150-day suspension was egregious and not supported by the facts. If the Court believes a sanction is warranted it should consider a lower sanction.

## XII.
## CONCLUSION

It is apparent that the Administrative Law Judge's ruling as upheld by the National Transportation Safety Board, was erroneous based on the facts and circumstances of this case. This is a mere administrative violation and created no threat at all to public Safety. As stated above based on the totality of the circumstances and other mitigating factors such as regulations that are not clearly defined pertaining to N-number changes, the conflicting letter from the Houston Flight Standards Office, the oral counseling only to the pilot

24

who flew the aircraft as N550MK when he was told it should be N550ME, and that aircraft Cessna Citation N550ME did undergo another conformity inspection after the incident, the Court should reverse the decision of the National Transportation Safety Board and/-or reduce the sanction such as a time period of thirty (30) days to sixty (60) days and not one hundred fifty (150) days based on a these unique facts and circumstances. This would be a fair alternative as to the confusion as to the correct tail number which was only off by one (1) letter. The incident happened over five (5) years ago and was truly only an administrative violation.

Dated: July 16, 2025

By: /s/ Edward A. Rose, Jr.

Edward A. Rose, Jr., Attorney at Law, P.C.
3027 Marina Bay Drive, Suite 208
League City, Texas 77573
Telephone (713) 581-6029
Facsimile: (832) 201-9960

Email: edrose@edroseattorneycpa.com
*Counsel for Petitioner*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of July 2025 an electronic copy of the foregoing brief was filed with the clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service will be accomplished by the appellate CM/ECF system.

July 16, 2025

/s/ Edward A. Rose, Jr.

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume

limitation of Fed. R. App. P. 32(a)(7)(B) because it consists of 4,317

words, as determined by the word-count function of Microsoft Word

2024, excluding the parts of the brief exempted by Fed. R. App. P.

32(f) and 5th Cir. R. 32.2.

2.    This brief complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type style requirements of Fed. R. App. P.

32(a)(6) because it has been prepared in proportionately spaced

typeface using Microsoft Word 2024 in 14-point Bookman Old Style.

July 16, 2025

/s/ Edward A. Rose, Jr.

**CERTIFICATE OF ELECTRONIC COMPLIANCE**

I hereby certify that, in the foregoing brief filed using the Fifth Circuit CM/ECF document filing system, (1) the privacy redactions required by 5th Cir. R. 25.2.13 have been made, (2) the electronic submission is an exact copy of the paper document, and (3) the document has been scanned for viruses with the most recent version of AVG Internet Security and is free of viruses.

July 16, 2025

/s/ Edward A. Rose, Jr.

28