IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

Case No. 25-60188

_____

GLEN A. HARDWICK,

Petitioner,

v.

NATIONAL TRANSPORTATION SAFETY
BOARD; BRYAN BEDFORD,
ADMINISTRATOR, FEDERAL AVIATION
ADMINISTRATION,

Respondents.

_____

ON PETITION FOR REVIEW OF AN ORDER OF THE
NATIONAL TRANSPORTATION SAFETY BOARD

_____

BRIEF FOR THE RESPONDENT
FEDERAL AVIATION ADMINISTRATION

_____

TRENT REHUSCH
Attorney, Aviation Litigation
Division

Office of the Chief Counsel
Federal Aviation Administration
800 Independence Avenue, SW
Washington, DC 20591
(202) 957-2768

September 2025          <u>Attorney for the Respondent</u>

# CERTIFICATE OF INTERESTED PERSONS

Case No. 25-60188

GLEN A. HARDWICK,

Petitioner,

v.

NATIONAL TRANSPORTATION SAFETY
BOARD; BRYAN BEDFORD,
ADMINISTRATOR, FEDERAL AVIATION
ADMINISTRATION,

Respondents.

The undersigned counsel of record certifies that the following listed private (non-governmental) persons and entities, as described in 5th Cir. R. 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Glen A. Hardwick, Petitioner.

2. Edward A. Rose, Jr., Esq., Attorney for Petitioner.

/s/ Trent Rehusch
Trent Rehusch
Attorney of record for Respondent
Federal Aviation Administration

i

# STATEMENT REGARDING ORAL ARUGMENT

In accordance with 5th Cir. R. 28.2.3, Respondent Federal Aviation Administration states that it does not believe further argument beyond that contained in the briefs is necessary for the disposition of this case. The facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. Fed. R. App. P. 34(a)(2)(c). Counsel for Respondent will be prepared to present oral argument should the Court determine that such argument would be of assistance.

# TABLE OF CONTENTS

**PAGE**

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . .   i

STATEMENT REGARDING ORAL ARUGMENT . . . . . . . . . . . .   ii

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . .   vi

I.   COUNTERSTATEMENT OF JURISDICTION . . . . . . . . . .   1

II.   COUNTERSTATEMENT OF THE ISSUES . . . . . . . . . . . . .   3

    A.   Whether the NTSB's findings that Petitioner (1) violated 14 C.F.R. §§ 45.21(a) and 45.23(a) by operating an aircraft displaying an incorrect registration number, and (2) violated 14 C.F.R. §§ 91.203(a)(1) and 91.7(a) by operating an aircraft without an appropriate and current airworthiness certificate are supported by substantial evidence and are consistent with applicable law, precedent, and policy . . . . . . . . . . . . . . . . . . . . . . . . .   3

    B.   Whether the FAA's imposed sanction of suspension of Petitioner's pilot certificate for 150 days is warranted in fact and law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

III.   STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . .   4

    A.   Statutory and Regulatory Background . . . . . . . . . . . . .   4

    B.   Relevant Facts in the Record . . . . . . . . . . . . . . . . . . . .   6

        1.   Petitioner operates aircraft N550MK for two flights on October 15, 2019 . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

2. FAA Order of Suspension . . . . . . . . . . . . . . . . . . . . 10

C. Procedural History and Disposition Below . . . . . . . . . 11

1. Appeal of FAA's Order of Suspension & Hearing . . 11

2. Initial Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

3. NTSB Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IV. SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . 18

V. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

A. Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

B. The NTSB's finding that Petitioner violated 14 C.F.R. §§ 45.21(a), 45.23(a), 91.7(a) and 91.203(a)(1), is supported by substantial evidence and is consistent with applicable law, precedent, and policy . . . . . . . . . . . . . . . . . . . . . . 22

1. Petitioner has waived any challenge to the NTSB's credibility determinations . . . . . . . . . . . . . . . . . . . . . 23

2. The NTSB's credibility determinations are reasonable and supported by the record . . . . . . . . . . . . . . . . . . . 25

3. Substantial evidence supports the NTSB's finding that the aircraft was registered as N550MK on October 15, 2019 and therefore that Petitioner's operation of N550MK on October 15, 2019 violated 14 C.F.R. §§ 45.21(a),45.23(a), 91.7(a) and 91.203(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

4. Petitioner fails to demonstrate that the NTSB's findings lack substantial evidence. . . . . . . . . . . . . . 30

# TABLE OF CONTENTS (Cont.)

5. The NTSB's decision is otherwise in accordance with law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

C. The FAA's imposed sanction of suspension of Petitioner's pilot certificate for 150 days is warranted in fact and law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

1. The FAA calculated its 150-day suspension of Petitioner's pilot certificate under its published sanction guidance . . . . . . . . . . . . . . . . . . . . . . . . . . 38

2. Petitioner provides no reason to disturb the 150-day suspension affirmed by the NTSB . . . . . . . 41

VI. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . 46

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

CERTIFICATE OF ELECTRONIC COMPLIANCE . . . . . . . . . . . 48

ADDENDA

TABLE OF AUTHORITIES

**PAGE**

Cases

*Adm'r v. Fay & Takacs*, NTSB Order No. EA-3501
1992 WL 40523 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Adm'r v. Haddock,* NTSB Order No. EA-5596
2011 WL 3958427 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 37

*Adm'r v. Hardwick*, NTSB Order No. EA-5995
2025 WL 752454 (2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 17

*Adm'r v. Kowal*, 5 NTSB 387 (1985) . . . . . . . . . . . . . . . . 4, 40, 42, 44

*Adm'r v. Lott*, 5 NTSB 2394 (1987) . . . . . . . . . . . . . . . . . . . . . . . . 4

*Adm'r v. Lufker*, 5 NTSB 1303 (1986) . . . . . . . . . . . . . . . . . . . . . . 42

*Adm'r v. Norwitch*, NTSB Order No. EA-5914
2021 WL 6286066 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Adm'r v. Phillips*, NTSB Order No. EA-5877
2020 WL 4569850 (2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Adm'r v. Schollmeyer*, NTSB Order No. EA-4422,
1995 WL 623842 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 36

*Adm'r v. Wagner*, 5 NTSB 543 (1985) . . . . . . . . . . . . . . . . . . . . . . 5

*Am. Power & Light Co. v. SEC*, 329 U.S. 90 (1946) . . . . . . 21, 22, 41

*Blackwell v. Bond*, 619 F.2d 372 (5th Cir. 1980) . . . . . . . . . . . . . . 28

*Boeta v. FAA*, 831 F.3d 636 (5th Cir. 2016) . . . . . . . . . . . . . . . 20, 25

**<u>Cases</u>**

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*
419 U.S. 281 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

*Centre Prop. Mgmt. v. NLRB,*
807 F.2d 1264 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . .  25

*Crear v. Horn*, 578 F. App'x 435 (5th Cir. 2014) . . . . . . . . . . . . . .  26

*Ellis v. Liberty Life Assur. Co. of Bos.*
394 F.3d 262 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

*Erickson v. NTSB*, 758 F.2d 285 (8th Cir. 1985) . . . . . . . . . . . . . .  22

*Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994) . . . . . . . . . . . . . . . .  26

*Fath v. Tex. Dep't of Transp.*, 924 F.3d 132 (5th Cir. 2018) . . . . . .  20

*Haines v. Dep't of Transp.*, 449 F.2d 1073 (D.C. Cir. 1971) . . . . . .  43

*Hite v. NTSB*, 991 F.2d 17 (1st Cir. 1991) . . . . . . . . . . . . . . . . . .  21, 22

*Johnson v. NTSB*, 979 F.2d 618 (7th Cir. 1992) . . . . . . . . . . . . . .  22

*Jones Bros., Inc. v. Sec'y of Lab.*, 68 F.4th 289 (6th Cir. 2023) . . .  27

*JTB Tools & Oilfield Servs., L.L.C. v. United States,*
831 F.3d 597 (5th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23, 24

*Miranda v. NTSB*, 866 F.2d 805 (5th Cir. 1989) . . . . . .  20, 21, 22, 25

*Nadiak v. Civ. Aeronautics Bd.*, 305 F.2d 588 (5th Cir. 1962) . . . .  28

*NLRB v. J.M. Mach. Corp.,* 410 F.2d 587 (5th Cir. 1969) . . . . . . .  25

**Cases**

*NLRB v. McCullough Env't Servs., Inc.*
5 F.3d 923 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

*NLRB v. Mini-Togs, Inc.,* 980 F.2d 1027 (5th Cir. 1993) . . . . . . . .   21

*NLRB v. Moore Bus. Forms, Inc.*
574 F.2d 835 (5th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

*New Orleans Cold Storage & Warehouse Co. v. NLRB,*
201 F.3d 592 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

*Nichols v. Enterasys Networks, Inc.,*
495 F.3d 185 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

*OMNI Int'l Hotels, Inc. v. NLRB,* 606 F.2d 570 (5th Cir. 1979) . .   21

*Pham v. NTSB,* 33 F.4th 576 (D.C. Cir. 2022) . . . . . . . . . .   11, 22, 41

*Phelps Dodge Corp. v. NLRB,* 313 U.S. 177 (1941) . . . . . . . . . . . .   21

*Puckett v. Chater,* 100 F.3d 730 (10th Cir. 1996) . . . . . . . . . . . . . .   27

*Sabine River Auth. v. U.S. Dept. of Interior,*
951 F.2d 669 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

*Sanders v. Unum Life Ins. Co. of Am.,*
553 F.3d 922 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . .   23, 24

*Snyder v. Louisiana,* 552 U.S. 472 (2008) . . . . . . . . . . . . . . . . . . .   26

*United States v. Green,* 964 F.2d 365 (5th Cir. 1992) . . . . . . . . . .   24

*Universal Camera Corp. v. NLRB,* 340 U.S. 474 (1951) . . . . . . . .   20

## TABLE OF AUTHORITIES (Cont.)

**Cases**

*Walker v. Civ. Aeronautics Bd.*, 251 F.2d 954 (2d Cir. 1958) . . . . . 22

*Willis v. Cleco Corp.*, 749 F.3d 314 (5th Cir. 2014) . . . . . . . . . . . . . 23

**Statutes**

5 U.S.C. § 706(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

49 U.S.C. § 1133(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

49 U.S.C. § 1153(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 20, 30

49 U.S.C. § 40103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

49 U.S.C. § 44701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

49 U.S.C. § 44709(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

49 U.S.C. § 44709(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11

49 U.S.C. § 44709(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

49 U.S.C. § 46110(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

49 U.S.C. § 46110(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 30

**Regulations**

14 C.F.R. § 45.21(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim.*

14 C.F.R. § 45.23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim.*

14 C.F.R. § 91.7(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim.*

**<u>Regulations</u>**

14 C.F.R. § 91.203(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim.*

49 C.F.R. § 821.1, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

49 C.F.R. §§ 821.47 to 821.50 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

49 C.F.R. § 821.64(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**<u>Rules</u>**

Fed. R. App. P. 28(a)(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Fed. R. App. P. 43(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**<u>Miscellaneous</u>**

FAA Order 2150.3C, Ch. 9 – Legal Enforcement Action Sanction
Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim.*

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————————————————————

Case No. 25-60188

———————————————————————————————

GLEN A. HARDWICK,

Petitioner,

v.

NATIONAL TRANSPORTATION SAFETY BOARD;
BRYAN BEDFORD, ADMINISTRATOR,[1]
FEDERAL AVIATION ADMINISTRATION,

Respondents.

———————————————————————————————

ON PETITION FOR REVIEW OF AN ORDER OF THE
NATIONAL TRANSPORTATION SAFETY BOARD

———————————————————————————————

## I. Counterstatement of Jurisdiction

This matter is before the Court on review of a final order of the

National Transportation Safety Board ("NTSB" or "Board"). On April 27,

2020, the Federal Aviation Administration ("FAA") issued an order

suspending Petitioner Glen A. Hardwick's Airline Transport Pilot

certificate for 150 days for his violation of FAA regulations pursuant to

---

[1] Bryan Bedford has been sworn in as Administrator of the Federal Aviation Administration since initiation of this proceeding. Under Fed. R. App. P. 43(c)(2), Mr. Bedford is therefore automatically substituted as a party in place of former Acting Administrator Chris Rocheleau.

the FAA's authority under 49 U.S.C. § 44709(b)(1). *See* Certified Record ("CR") 22-24. Petitioner appealed the FAA's order to the NTSB, which had jurisdiction to review the order under 49 U.S.C. §§ 1133(a)(1) and 44709(d)(1).

Following an evidentiary hearing, an NTSB Administrative Law Judge ("ALJ") issued an oral initial decision on October 20, 2022, affirming the FAA's orders of suspension. CR 608-55. Petitioner appealed the ALJ's decision to the full NTSB, which issued a final order on February 19, 2025, in *Administrator v. Hardwick*, NTSB Order No. EA-5995, affirming the FAA's suspension of Petitioner's pilot certificate.[2] CR 1283-1353.

This Court has jurisdiction to review a final order of the NTSB under 49 U.S.C. §§ 1153(b), 44709(f) and 46110(a). Petitioner filed a timely petition for review on April 10, 2025.

---

[2] The NTSB performed a quasi-judicial function in this case by adjudicating Petitioners' appeal from the FAA's orders. The FAA is the real party in interest because it is the enforcement of the FAA's orders that Petitioners challenge. *See* 49 U.S.C. § 44709(f) (the FAA "shall be made a party to the judicial review proceedings"). The NTSB ordinarily does not enter an appearance during judicial review of its decisions, 49 C.F.R. § 821.64(a), and it did not participate in the preparation of this brief.

## II. Counterstatement of the Issues

The FAA suspended Petitioner's Airline Transport Pilot certificate after he chose to fly an aircraft lacking a required airworthiness certificate and displaying the wrong registration (tail) number on two flights.[3] Prior to the second flight FAA aviation safety inspectors specifically told Petitioner that the aircraft was not in compliance with FAA regulations and should not be operated.

The issues presented are the following:

**A. Whether the NTSB's findings that Petitioner (1) violated 14 C.F.R. §§ 45.21(a) and 45.23(a) by operating an aircraft displaying an incorrect registration number, and (2) violated 14 C.F.R. §§ 91.203(a)(1) and 91.7(a) by operating an aircraft without an appropriate and current airworthiness certificate are supported by substantial evidence and are consistent with applicable law, precedent, and policy.**

**B. Whether the FAA's imposed sanction of suspension of Petitioner's pilot certificate for 150 days is warranted in fact and law.**

Pertinent statutes and regulations are reproduced in the addenda to this brief.

---

[3] Aircraft registration numbers, often referred to as a "tail number," are typically displayed on the exterior of the aircraft's tail. An aircraft's tail number is akin to an automobile's license plate number.

### III. Statement of the Case

### A. Statutory and Regulatory Background

Congress has charged the FAA with protecting the safety of the national airspace system. *See* 49 U.S.C. §§ 40103 and 44701. As part of this charge, the FAA prohibits any person from operating an aircraft unless that aircraft is properly registered and displays on its exterior a valid registration number, 14 C.F.R §§ 45.21(a) and 45.23(a), and has within it an appropriate and current airworthiness certificate, 14 C.F.R. § 91.203(a)(1).

Proper registration of aircraft allows the FAA to document the aircraft's complete history, such as its flight history and maintenance and ownership records, and ensure its proper use.[4] The FAA likewise requires a separate certificate establishing an aircraft's airworthiness, attesting that the aircraft can be flown safely.

---

[4] The FAA's registration system is integral to the FAA's mission to ensure aviation safety and security by providing a reliable way to track aircraft and thereby hold owners accountable for unsafe conditions and practices. *See Adm'r v. Kowal*, 5 NTSB 387, 388 n.4 (1985) (reflecting the FAA's longstanding view "that the failure to display the required [registration] numbers has wide safety implications including identification in search and rescue operations and for enforcement purposes.") (internal quotations omitted); *Adm'r v. Lott*, 5 NTSB 2394, 2397 (1987) (explaining that "the true identity of an aircraft . . . is essential in determining the maintenance, repair and alteration history of that aircraft and its conformity to its type design and applicable airworthiness directives.").

Pilots are ultimately entrusted with the safe operation of aircraft. As the Board noted in its decision, "[a]s [pilot-in-command], respondent has an independent obligation to ensure safe operation of an aircraft." CR 1301; *see also Adm'r v Schollmeyer*, NTSB Order No. EA-4422, 1995 WL 623842, at *2 (1995) ("As a general rule, the pilot-in-command is responsible for the overall safe operation of the aircraft."). A pilot holding an Airline Transport Pilot (ATP) Certificate, as Petitioner does, which is "the highest airman certificate awarded, is expected to meet and to conform to the highest standards of care, judgment, and responsibility required of any holder of that certificate." *Adm'r v. Wagner*, 5 NTSB 543, 546 (1985); *see also Adm'r v. Phillips*, NTSB Order No. EA-5877, 2020 WL 4569850, at *16 (2020) (higher sanction warranted because "the Board has long held that holders of [Airline Transport Pilot] certificates are to be held to the highest standards of care.").

Accordingly, FAA regulations assign responsibility for an aircraft's display of a valid registration number and the currentness of the airworthiness certificate of the aircraft being operated to the pilot operating said aircraft. *See* 14 C.F.R. § 45.21(a) ("*[N]o person may operate a U.S.-registered aircraft unless that aircraft displays nationality and*

registration marks in accordance with the requirements of this section and §§ 45.23 through 45.33.") (emphasis added); 14 C.F.R. § 45.23(a) ("Each *operator of an aircraft* must display on that aircraft marks consisting of the Roman capital letter "N" (denoting United States registration) followed by the registration number of the aircraft") (emphasis added); 14 C.F.R. § 91.7(a) ("*No person may operate* a civil aircraft unless it is in an airworthy condition.") (emphasis added); 14 C.F.R. § 91.203(a)(1) ("*[N]o person may operate* a civil aircraft unless it has within it the following: An appropriate and current airworthiness certificate.") (emphasis added).

When determining the appropriate sanction for a regulatory violation, the FAA utilizes its sanction guidance and criteria set forth in the publicly-available FAA Order 2150.3C, Ch. 9, which promotes consistency and fairness. CR 272-308.

### B. Relevant Facts in the Record

#### 1. Petitioner operates aircraft N550MK for two flights on October 15, 2019.

Petitioner holds an Airline Transport Pilot Certificate. CR 4 at ¶1; CR 22 at ¶1. On October 15, 2019, Petitioner served as pilot-in-command

of a Cessna Citation 550 ("Cessna 550" or "the aircraft") that he flew from Pearland, Texas (KLVJ) to Wichita, Kansas (KICT). CR 4 at ¶ 2; CR 22 at ¶ 2. When Petitioner landed in Wichita, two FAA Aviation Safety Inspectors, Keith Allen and Samuel Ragin, conducted a ramp check of the aircraft.[5] CR 1138-41.

During the ramp check, the inspectors observed that the aircraft tail number, which originally had been painted to display N550MK, had been modified with tape to alter the letter "K" such that it now displayed the letter "E," thus displaying registration number N550ME instead of N550MK. CR 4 at¶3; CR 22 at ¶3; CR 1115-16, 1138-41. When asked for the aircraft's registration certificate, Petitioner presented the inspectors with two different aircraft registration certificates: one for aircraft N550ME and the other for aircraft N550MK. CR 1138-41. Petitioner also presented the inspectors with an airworthiness certificate for aircraft N550ME, CR 1178. Petitioner did not produce an airworthiness certificate for aircraft N550MK. CR 1138-41.

---

[5] A ramp check is an unannounced inspection by FAA inspectors to verify that an aircraft and its crew are in compliance with applicable regulations and safety standards.

The FAA inspectors verified that at the time Petitioner operated the flight to Wichita, the aircraft was registered with the FAA as N550MK. Utilizing the FAA registry, the inspectors determined that the FAA had assigned registration number N550MK to the aircraft on May 8, 2019 and that on July 3, 2019, the aircraft's owner, Michael King, certified that that registration number was displayed on the aircraft as required by FAA regulations. CR 901, 905, 1115; *see also* CR 383-84.[6] In addition to the inspectors' review of the registry and the physical registration certificate for N550MK on board the aircraft, Petitioner also showed the FAA inspectors an Assignment of Special Registration Number (AC Form 8050-64) for aircraft N550MK signed and executed July 3, 2019. CR 1129. This form was issued prior to issuance of the aircraft's permanent registration certificate for N550MK, authorizing placement of the new number on the aircraft and, upon execution, serving as proof of the change to the new registration number pending the owner's receipt of a permanent registration certificate. *See id.*; *see also* CR 365-67, 373, 436, 446. The FAA inspectors also verified that the FAA

---

[6] Mr. King had made this request as part of his effort to change the aircraft's registration number from N550ME to N550MK to reflect his initials. *See* CR 535.

had not issued an airworthiness certificate for N550MK. CR 4 at ¶5; CR 23 at ¶5; CR 1119-26.[7]

Upon completion of the ramp check, the inspectors handed Petitioner a "Condition Notice" (FAA Form 8620-1), on which they indicated that N550MK was the correct registration number for the aircraft, and that the registration number displayed on the aircraft, N550ME, was incorrect and in violation of 14 C.F.R. § 45.21. CR 1117-18. The inspectors stated in the Condition Notice that Petitioner's operation of the aircraft prior to correction of the violation would be contrary to FAA regulations unless Petitioner obtained a "Special Flight Permit" authorizing the flight. *Id.*

---

[7] The FAA issued an airworthiness certificate for aircraft N550ME on April 28, 2014. CR 661. The aircraft's owner, Mr. King, requested to change the airworthiness certificate from N550ME to N550MK, but the FAA denied this request on September 11, 2019, because Mr. King was unable to produce necessary records regarding the aircraft's import from Canada to the United States in 2014. CR 393-95, 409, 413-14; *see also* CR 1119-22 (Sept. 11, 2019 letter). In the denial letter the FAA recommended that N550MK undergo a conformity inspection, advising Mr. King that "it is your responsibility to ensure that the aircraft meets all CFR requirements." CR 1119; *see also* CR 1123-26 (FAA letter issued October 30, 2019, denying for the same reasons a repeat request to change the airworthiness certificate); CR 440 (explaining that "usually the registration process is completed first. And then afterwards, the airworthiness certificate would be changed to match the registration number, the new special registration number on the aircraft.").

Despite both the verbal warnings from the FAA inspectors and the written Condition Notice, Petitioner chose to fly N550MK back from Wichita to Pearland later that day without obtaining a Special Flight Permit and without correcting the regulatory violations noted by the FAA's inspectors. CR 4 at ¶2; CR 22 at ¶2.

## 2. FAA Order of Suspension.

After an investigation, on April 27, 2020, the FAA issued an order suspending Petitioner's Airline Transport Pilot certificate for 150 days for violating 14 C.F.R. §§ 45.21(a), 45.23(a), 91.7(a), and 91.203(a)(1) by flying an aircraft displaying a modified and incorrect registration number and that also did not have a current and valid airworthiness certificate. CR 22-24. 14 C.F.R. §§ 45.21(a) and 45.23(a) together provide that no person may operate a U.S.-registered aircraft unless that aircraft displays the registration number of the aircraft. CR 23. 14 C.F.R. §§ 91.203(a)(1), and 91.7(a) together provide that no person may operate a civil aircraft unless the aircraft has within it an appropriate and current airworthiness certificate, and that no person may operate a civil aircraft unless it is in an airworthy condition. *Id.*

## C. Procedural History and Disposition Below

## 1. Appeal of FAA's Order of Suspension & Hearing.

Petitioner appealed the FAA's Order of Suspension to the NTSB on May 14, 2020.[8] An NTSB ALJ heard Petitioner's case in a hearing on October 18-19, 2022. CR 334-607.

### a. FAA's witnesses

FAA Inspectors Allen and Ragin, who conducted the ramp check of Petitioner's flight in Wichita on October 15, 2019, testified on behalf of the FAA. Inspectors Allen and Ragin testified that when they spoke with him, Petitioner produced two registration certificates, one for N550ME and one for N550MK, an Assignment of Special Registration for N550MK dated July 3, 2019, and an airworthiness certificate for N550ME. *See* CR

---

[8] Orders of the FAA suspending or revoking pilot certificates may be appealed to the NTSB, where they are first heard by an administrative law judge, who is authorized to hold an evidentiary hearing with witness testimony, exhibits, and argument, and thereafter make findings of fact and conclusions of law as to whether the FAA has established the violations alleged in the FAA's underlying order. *See* 49 U.S.C. § 44709(d)(1) (permitting appeal to NTSB); 49 C.F.R. § 821.1, *et seq.* (rules of practice in administrative proceedings before NTSB); *Pham v. NTSB*, 33 F.4th 576, 582 (D.C. Cir. 2022) (describing "split-enforcement" system where "FAA has regulatory and enforcement authority, and the Board has adjudicatory authority"). Following an initial decision made by the administrative law judge, a party may appeal the administrative law judge's decision to the full five-member National Transportation Safety Board. *See* 49 C.F.R. §§ 821.47 to 821.50. The Board's decision on appeal is the decision under review by this Court.

360, CR 388 (Allen); CR 418-21, 426, 441, 446-47 (Ragin). The inspectors testified that Inspector Ragin prepared and then handed the Condition Notice to Petitioner, further testifying that they would not leave a condition notice with a receptionist at the fixed-base operator used by Petitioner.[9] CR 361-63, 382, 387 (Allen); CR 422, 425, 442 (Ragin). Inspector Allen explained that when he searched the FAA's registry that day, there were no registration records for N550ME but that there were records for N550MK, and that a search of the aircraft's distinct serial number returned a result indicating that N550MK was the aircraft's correct registration number. CR 383-84.

### b. Petitioner's testimony

Petitioner testified as to his version of events. CR 461-528. Petitioner testified that he met with Mr. King on October 14, 2019, and went aboard the aircraft to check its documentation. CR 469-71. Petitioner described looking through the documents on board, testifying that once he saw registration and airworthiness certificates for N550ME,

---

[9] A "fixed-base operator" serves as a service station at airports, providing an array of aircraft-related services, such as maintenance, refueling, and parking, and amenities for passengers and crew, such as restrooms, waiting areas, and short-term courtesy cars available for patrons' use.

he stopped looking even though there were other documents on board. *Id.*; CR 515 (conceding ramp check was first time he had seen the Assignment of Special Registration for N550MK).

Petitioner also testified that before leaving Wichita, he was handed the Condition Notice by a receptionist at the fixed-base operator. CR 483-84, 518. On cross-examination, Petitioner initially reiterated that the Condition Notice was given to him by the receptionist before conceding that he did not recall whether the inspectors handed or attempted to hand him the Condition Notice; he further testified that *if* the inspectors had handed the Condition Notice to him, he may have handed it back to them, but he was not sure. *See* CR 500-08, 521-24; *see, e.g.*, CR 506 ("As I've stated, I don't remember whether it touched my hands, and I was supposed to look at it."). Petitioner also testified that the Condition Notice was not red so it was not an urgent "no-go" tag and that his passenger had arrived simultaneously and was in a hurry, so Petitioner did not look at the Condition Notice until after completing his flight back to Pearland. CR 484-85, 508, 518-19, 526.

### c. Petitioner's witnesses

Jack Monteith, a pilot who flew the aircraft on September 25, 2019, and Mr. King (the aircraft's owner) testified on Petitioner's behalf. CR 451-59; CR 530-52. Don McClain testified as an expert as to the responsibilities of a pilot-in-command, explaining that a pilot-in-command is "basically responsible for what's happening. You're fully responsible." CR 566. Mr. McClain further testified that while a pilot-in-command is not responsible for the aircraft's registration, a pilot-in-command must ensure an aircraft is in an airworthy condition prior to flying and must go back to the owner if there are any registration issues. CR 574-75.[10]

### 2. Initial Decision.

The ALJ issued an oral initial decision on October 20, 2022, affirming the order of suspension against Petitioner. CR 608-55. The ALJ thoroughly discussed the exhibits admitted into evidence, the testimony of each of the witnesses, and made credibility determinations. *Id.*

---

[10] *See, e.g.*, CR 575 ("You need to go back and find the owner/operator and find out what the problem is. And he needs to correct it. That's his problem. I'm not going to fly . . . ."); *id.* ("The pilot-in-command can't do nothing on the airworthy registration . . . All he can do is say, 'I don't need to go. We got a problem.'").

The ALJ first noted that the critical issue in this case was what the registration number for the aircraft was when operated by Petitioner from Pearland to Wichita and back on October 15, 2019. CR 637. The ALJ found that documentary evidence established that the aircraft was registered as N550MK on October 15, 2019, further noting that there was no language on the Assignment of Special Registration form or regulations cited by Petitioner to support his argument that a new airworthiness certificate must be obtained before a new registration certificate can be issued and, in the absence of such an airworthiness certificate, the aircraft's registration number reverted to the prior number. CR 637-42 (citing CR 897-905).

The ALJ also found that the inspectors' "very credible testimony" of Petitioner handing the inspectors a registration certificate for N550MK also established the registration number of the aircraft, CR 639, ultimately finding the inspectors' testimony more credible than that of Petitioner or Mr. King, CR 641-42. In particular, the ALJ highlighted Petitioner's equivocations about how he received the Condition Notice compared to the inspectors' "unwavering" testimony that they handed the Notice to Petitioner, and the fixed-base operator receptionist's

15

written statement (at CR 1180) containing no mention of being asked by an FAA inspector to provide a Condition Notice or any document to Petitioner. CR 642-43. The ALJ likewise found Inspector Allen's testimony more credible than Petitioner's regarding their respective aircraft registry searches on October 15, 2019, given motives, overall consistency in testimony, and their demeanor when testifying. CR 643-44.

The ALJ rejected Petitioner's affirmative defense of reasonable reliance on Mr. King, noting (1) Petitioner's receipt and disregard of the Condition Notice handed to him by FAA inspectors, (2) failure to check all of the documentation onboard the aircraft during his pre-flight check, and (3) his responsibility as a pilot-in-command to resolve any identified discrepancies before flying, even if he believed them to be erroneous. CR 644-46. Above all, the ALJ found Petitioner not to be a credible witness, noting that Petitioner's argumentative demeanor when testifying was consistent with the inspectors' description of Petitioner's behavior during their interactions with him. CR 644-47.

Accordingly, the ALJ found that the FAA had proven all the factual allegations in the complaint and thus had proven the regulatory

violations alleged. CR 647. The ALJ further found the proposed sanction, a 150-day suspension, to be reasonable given the facts found. CR 649-51.

### 3. NTSB Decision.

Petitioner appealed the ALJ's oral initial decision to the full NTSB and filed a brief perfecting his appeal on December 8, 2022. CR 1223-53; *see also* CR 1260-81 (FAA appeal brief). On February 19, 2025, in *Administrator v. Hardwick*, NTSB Order No. EA-5995, the Board affirmed the ALJ's decision in its entirety.

After reviewing the evidence in the record *de novo*, CR 1283-97, the Board affirmed the ALJ's finding that the aircraft was registered as N550MK while displaying N550ME for the flights on October 15, 2019 and that Petitioner thus violated 14 C.F.R. §§ 45.21(a) and 45.23(a), rejecting Petitioner's theory, CR 1297-98. The Board also affirmed the ALJ's finding that Petitioner violated 14 C.F.R §§ 91.7(a) and 91.203(a)(1), because the aircraft "had a valid registration number of N550MK, yet it had no valid airworthiness certificate for N550MK" and rejected Petitioner's argument that the aircraft was airworthy because Mr. King later obtained a new airworthiness certificate. CR 1298-1300.

The Boad also rejected Petitioner's reasonable reliance defense, explaining that as pilot-in-command, Petitioner "has an independent obligation to ensure safe operation of an aircraft" and "was not absolved of his responsibility for the safe operation of the aircraft by following the instructions of the owner to fly." CR 1300-01. The Board further highlighted the inspectors' verbal instruction to Petitioner to not fly and their handing of the Condition Notice directly to Petitioner and found no error in the inspectors' conduct. CR 1301-03.

Finally, the Board affirmed the 150-day suspension as justified in fact and warranted in law, being consistent with stated FAA sanction policy and Board precedent. CR 1303-05.

## IV. Summary of the Argument

Pilots-in-command, particularly those holding an Airline Transport Pilot certificate as Petitioner does, are held to the highest standard of care for the safety of the flying public. On October 15, 2019, Petitioner operated N550MK displaying an incorrect registration number (or "tail number") and without a current airworthiness certificate for N550MK on two separate flights. Despite being specifically notified by FAA aviation safety inspectors of the aircraft's deficient registration and airworthiness

18

certificates, Petitioner chose to make a return flight to Pearland, Texas. In doing so, Petitioner violated 14 C.F.R. §§ 45.21(a), 45.23(a), 91.7(a) and 91.203(a)(1), resulting in the FAA's decision to order a 150-day suspension of his pilot certificate.

The NTSB properly determined that the aircraft was registered as N550MK and that Petitioner operated the aircraft with the incorrect registration displayed and without a valid airworthiness certificate. The NTSB's order is supported by substantial evidence in the record and is otherwise in accordance with the law.

On appeal to this Court, Petitioner fails to provide any basis to challenge the NTSB's credibility findings, which were, regardless, not arbitrary or capricious. Petitioner's remaining arguments, which rely on the self-serving and discredited testimony of his witnesses, should be rejected by this Court.

Petitioner likewise fails to demonstrate any error in the FAA's sanction as affirmed by the NTSB, which is justified in fact and warranted in law.

## V. Argument

## A. Standard of review

This Court will affirm an agency's decision if the agency's findings of fact are not "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or 'unsupported by substantial evidence.'" *Miranda v. NTSB*, 866 F.2d 805, 807 (5th Cir. 1989) (quoting 5 U.S.C. § 706(2)(A), (E)); *see also* 49 U.S.C. §§ 1153(b)(3) & 46110(c) (the NTSB's factual findings are conclusive if supported by substantial evidence). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951). In other words, "[s]ubstantial evidence is 'more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Boeta v. FAA*, 831 F.3d 636, 641 (5th Cir. 2016) (quoting *Ellis v. Liberty Life Assur. Co. of Bos.*, 394 F.3d 262, 273 (5th Cir. 2004)). Under this "highly deferential standard," this Court has "the 'least latitude in finding grounds for reversal.'" *Fath v. Tex. Dep't of Transp.*, 924 F.3d 132, 136 (5th Cir. 2018) (quoting *Sabine River Auth. v. U.S. Dept. of Interior*, 951 F.2d 669, 678 (5th Cir. 1992)); *see also*

*Miranda*, 866 F.2d at 807 (review of the NTSB's decision is "circumscribed"); *Hite v. NTSB*, 991 F.2d 17, 20 (1st Cir. 1991) (appellate courts apply a "very narrow standard of review" to NTSB decisions).

This Court "must give great deference to the ALJ's credibility determinations," *New Orleans Cold Storage & Warehouse Co. v. NLRB*, 201 F.3d 592, 599 (5th Cir. 2000) (collecting cases), "for which there is a very narrow window of appellate scrutiny," *Miranda*, 866 F.2d at 807. *See also NLRB v. Mini-Togs, Inc.,* 980 F.2d 1027, 1032 (5th Cir. 1993) ("The [agency] and its ALJ are due deference when a finding of fact rests on resolution of witness credibility.") (citing *OMNI Int'l Hotels, Inc. v. NLRB*, 606 F.2d 570, 573 (5th Cir. 1979)).

With respect to an agency's sanction determination, the Supreme Court has explained that "[i]t is a fundamental principle . . . that where Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy 'the relation of remedy to policy is peculiarly a matter for administrative competence.'" *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 112 (1946) (quoting *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 194 (1941)). "Only if the remedy chosen is unwarranted in law or is without justification in fact should a

court attempt to intervene in the matter." *Id.* at 112-13; *see also Pham v. NTSB*, 33 F.4th 576, 583–84 (D.C. Cir. 2022) (applying *Am. Power & Light* standard to NTSB decision). Accordingly, with respect to sanction "'[t]he court is not empowered to substitute its judgment for that of the agency.'" *Miranda*, 866 F.2d at 807 (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974)); *see also Erickson v. NTSB*, 758 F.2d 285, 290 (8th Cir. 1985). This is particularly so as to aviation matters given "the strong policy concern for public safety requires that the Board be given a wide range of discretion in imposing sanctions." *Erickson*, 758 F.2d at 290 (citing *Walker v. Civ. Aeronautics Bd.*, 251 F.2d 954, 956 (2d Cir. 1958)); *see also Hite*, 991 F.2d at 20 (quoting *Johnson v. NTSB*, 979 F.2d 618, 623 (7th Cir. 1992)) (same).

**B. The NTSB's finding that Petitioner violated 14 C.F.R. §§ 45.21(a),45.23(a), 91.7(a) and 91.203(a)(1), is supported by substantial evidence and is consistent with applicable law, precedent, and policy**

The NTSB found that the FAA proved by a preponderance of the evidence that Petitioner violated FAA regulations by operating the aircraft registered as N550MK on October 15, 2019, while the aircraft improperly displayed tail number N550ME. The NTSB likewise found

that Petitioner operated N550MK when he did not have on board an airworthiness certificate for N550MK. The NTSB's factual findings are supported by substantial evidence and are consistent with applicable law precedent and policy.

**1. Petitioner has waived any challenge to the NTSB's credibility determinations.**

This Court has long recognized that a party may waive a claim or issue by failing to include adequate argument or citation to authority in its opening brief. *See JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016) (citing Fed. R. App. P. 28(a)(8), and *Willis v. Cleco Corp.*, 749 F.3d 314, 319 (5th Cir. 2014)). "Merely mentioning a claim does not constitute a supported argument or adequate briefing." *Sanders v. Unum Life Ins. Co. of Am.*, 553 F.3d 922, 926 (5th Cir. 2008); *see also Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007) ("Where analysis is so deficient, this court has considered the issue waived for inadequate briefing.").

In his opening brief, Petitioner fails to develop any argument challenging the NTSB's credibility determinations, omitting any mention of the applicable standard of review and any argument whether (or how)

the NTSB's credibility determinations were arbitrary or capricious. Petitioner merely states in conclusory fashion that (1) the ALJ "made erroneous rulings on . . . credibility," Pet'r's Br. at 5, and later alleges (2) that the ALJ was somehow biased, *id.* at 21-22.

"To avoid waiver, a party must identify relevant legal standards and any relevant Fifth Circuit cases," *JTB Tools*, 831 F.3d at 601 (internal quotations omitted), and do more than refer to an issue "in one sentence" while "fail[ing] to provide any analysis whatsoever on the issue," *United States v. Green*, 964 F.2d 365, 371 (5th Cir. 1992) (collecting cases). Yet Petitioner challenges the NTSB's credibility determination in just one conclusory sentence and offhandedly accuses the ALJ of being biased, otherwise failing to develop this argument or reference applicable Fifth Circuit case law. This is insufficient to maintain any challenge to the NTSB's credibility decision (let alone reverse it as arbitrary and capricious) under this Court's precedent.[11]

---

[11] Any subsequent argument from Petitioner in his reply brief would be too late to develop the issue. *Sanders*, 553 F.3d at 927 ("An argument first supported in a reply brief comes too late because the appellee is not entitled thereafter to respond.").

## 2. The NTSB's credibility determinations are reasonable and supported by the record.

This Court has "made clear 'that whether made by jury, judge or agency a determination of credibility is non-reviewable unless there is uncontrovertible documentary evidence or physical fact which contradicts it.'" *Miranda*, 866 F.2d at 807 (quoting *NLRB v. J.M. Mach. Corp.,* 410 F.2d 587, 590 (5th Cir. 1969)).[12]

The ALJ's credibility determinations, as accepted by the full Board, CR 1303, are reasonable and based on the record. Specifically, the ALJ properly found the FAA inspectors, who were generally consistent throughout their testimony, more credible than Petitioner, who was inconsistent in his testimony and had far more motivation to misstate the facts in his favor. *Compare* CR 483-84, 518, *with* CR 500-08, 521-24 (conceding memory of interaction with FAA inspectors was fuzzy).[13]

---

[12] *See also NLRB v. McCullough Env't Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993) (This Court will overturn an agency's credibility determination only if it "is unreasonable, contradicts other findings of fact, or is 'based on an inadequate reason, or no reason at all.'") (quoting *NLRB v. Moore Bus. Forms, Inc.*, 574 F.2d 835, 843 (5th Cir. 1978)); *Boeta*, 831 F.3d at 641 ("There is a 'very narrow window of appellate scrutiny' for an ALJ's credibility assessment.'") (quoting *Miranda*, 866 F.2d at 807); *McCullough*, 5 F.3d at 928 (explaining that "only in rare circumstances" will this Court overturn an agency's credibility determinations) (citing *Centre Prop. Mgmt. v. NLRB*, 807 F.2d 1264, 1268 (5th Cir. 1987)).

[13] Likewise, Mr. King's testimony was inconsistent at times. He initially testified that Petitioner told him over the phone that the receptionist at the fixed-

Petitioner was also generally "brusque and argumentative." CR 646-47; *see also* CR 371, 408, 486-88, 491-92, 495-96, 500-01, 503, 506-08, 511-12, 521-22 (poor demeanor during the hearing). The ALJ was well within his authority to conclude that this behavior rendered Petitioner a less reliable witness. *See Crear v. Horn,* 578 F. App'x 435, 437 (5th Cir. 2014) ("[B]eing able to observe inflection, demeanor, and other intangibles . . . are central to [a credibility] inquiry.") (citing *Snyder v. Louisiana,* 552 U.S. 472, 477 (2008)); *Falco v. Shalala,* 27 F.3d 160, 164 n.18 (5th Cir. 1994) ("The ALJ enjoys the benefit of perceiving first-hand the claimant at the hearing.").

Petitioner fails to demonstrate that this is the rare circumstance where this Court will overturn an agency's credibility determination. Petitioner claims the ALJ "appeared to be prejudicial to the Petitioner," again restating his argument that aircraft registry search results he produced contradict the inspectors' testimony. Pet'r's Br. at 21-22 (citing CR 1131). The exhibit referenced, CR 1131, does not in any way contradict the inspectors' testimony as to their review of the FAA aircraft

---

base operator gave him the Condition Notice while Petitioner was in Kansas, CR 542, but later testified that he did not recall discussing the Condition Notice with Petitioner until after the flight back to Texas, CR 549-51.

registry on October 15, 2019, because it is from March 21, 2020, more than five months later and, critically, after Mr. King had re-registered the aircraft as N550ME. *See* CR 899 (request to change registration to N550ME dated October 17, 2019); CR 897 (Assignment of Special Registration for N550ME issued & executed November 1, 2019). A registry search made on March 21, 2020, would of course indicate the aircraft registered as N550ME because it had been so re-registered soon after the ramp check.

Petitioner offers no demonstration of the ALJ's alleged bias or unfair prejudice towards Petitioner beyond the fact that the ALJ ruled against him. A conclusory assertion of bias reflecting the losing party's mere dissatisfaction with the outcome is insufficient to overturn a fact-finder's credibility decision. *See, e.g.*, *Puckett v. Chater*, 100 F.3d 730, 734 (10th Cir. 1996) (rejecting conclusory allegation that ALJ was biased); *Jones Bros., Inc. v. Sec'y of Lab.*, 68 F.4th 289, 303 (6th Cir. 2023) ("[T]he mere fact that the ALJ came to conclusions that [the losing party] disagrees with does not compel the conclusion that the alleged errors stemmed from bias.").

The ALJ's credibility determinations, as accepted by the full Board, CR 1303, are reasonable and support the NTSB's related factual findings.

**3. Substantial evidence supports the NTSB's finding that the aircraft was registered as N550MK on October 15, 2019 and therefore that Petitioner's operation of N550MK on October 15, 2019 violated 14 C.F.R. §§ 45.21(a),45.23(a), 91.7(a) and 91.203(a)(1).**

"The function of a reviewing Court is to accept the findings of fact made by the administrative body if there is substantial evidence in the record as a whole to support those findings." *Nadiak v. Civ. Aeronautics Bd.*, 305 F.2d 588, 592 (5th Cir. 1962) (collecting authorities). This Court "do[es] not reweigh the evidence." *Blackwell v. Bond*, 619 F.2d 372, 373 (5th Cir. 1980) (citing *Nadiak*, 305 F.2d at 592).

Here, as the ALJ correctly noted, the critical issue in this case was what the registration number for the aircraft was when operated by Petitioner from Pearland to Wichita and back on October 15, 2019. Substantial evidence supports the NTSB's finding that it was N550MK. The NTSB properly recognized that documents in the record establish the aircraft's assigned registration number was N550MK on October 15, 2019, in particular the Assignment of Special Registration Number on board the aircraft which, once executed on July 3, 2019 by Mr. King,

effected the aircraft's change from N550ME to N550MK and served as temporary proof of registration pending receipt of a standard registration certificate. CR 1298 (citing CR 901); *see also* CR 637-38 (same); CR 639-40 (noting post-October 15 request by Mr. King for, and issuance of, Assignment of Special Registration Number switching the aircraft back from N550MK to N550ME, citing CR 897-99). The NTSB's reasoned and supported credibility determinations, *supra* Sec. V(B)(2), in favor of the FAA's inspectors further buttress this finding. *See supra* III(C)(1)(a) (outlining inspectors' testimony establishing (1) the presence on the aircraft of a standard registration certificate indicating aircraft registration number N550MK and (2) a contemporaneous search of the FAA aircraft registry by Inspector Allen which indicated aircraft was registered as N550MK).

A straightforward application of the NTSB's factual finding that the aircraft was registered as N550MK on the day of Petitioner's flights establishes that he violated 14 C.F.R. §§ 45.21(a),45.23(a), 91.7(a) and 91.203(a)(1). 14 C.F.R. §§ 45.21(a) and 45.23(a) provide that no person may operate an aircraft without displaying the aircraft's registration marks. For the flights in question, Petitioner operated the aircraft

registered as N550MK while displaying registration number N550ME. CR 1115-16. 14 C.F.R. § 91.203(a)(1) provides that no person may operate an aircraft without an appropriate and current airworthiness certificate, and 14 C.F.R. § 91.7(a) provides that no person may operate an aircraft unless it is in an airworthy condition. It is undisputed that Petitioner operated N550MK without an airworthiness certificate for N550MK, CR 1119-26, and operating without a current airworthiness certificate amounts to operating an aircraft in an unairworthy condition. CR 1302.

Because the record reflects that substantial evidence, supported by the ALJ's contemporaneous credibility findings, establishes that the aircraft was registered as N550MK, the NTSB's findings were within the range of permissible outcomes and this Court's review need not go any further. *See* 49 U.S.C. §§ 1153(b)(3) & 46110(c) (the NTSB's factual findings are conclusive when supported by substantial evidence).

### 4. Petitioner fails to demonstrate that the NTSB's findings lack substantial evidence.

On appeal to this Court, Petitioner largely reiterates his discredited version of events, repeating nearly verbatim much of his appeal to the Board challenging the ALJ's initial decision. In doing so,

Petitioner simply summarizes in self-serving fashion the evidence he believes is helpful to his case while omitting any harmful evidence and fails to explain why the Board's conclusions lack substantial evidence. *See* Pet'r's Br. at 5-11.

### a. Aircraft registry search results from March 2020 do not establish the aircraft's registration status on October 15, 2019.

As he argued before the NTSB, Petitioner points to screenshots of the FAA's online aircraft registry from March 2020 as proof that the aircraft was in fact registered as N550ME on October 15, 2019, and that N550MK was "deregistered." Pet'r's Br. at 10-11, 22 (citing CR 1130-31). These documents are of no value to Petitioner's defense as they post-date the events in question. Mr. King switched his registration back from N550MK to N550ME shortly after October 15, 2019; naturally, a search of the aircraft's registration in March 2020 would indicate its registration as N550ME. *See* CR 897-99. These March 2020 documents provide no insight into the aircraft's registration as of October 15, 2019, and do not meet the high standard for overturning the NTSB's factual finding.

**b. FAA records pertaining to a different flight on a different day involving a different pilot and a different inspector do not obviate Petitioner's improper flights on October 15, 2019.**

Petitioner also points to two entries in the FAA's Program Tracking and Reporting Subsystem (PTRS) as part of the Safety Performance Analysis System (SPAS) pertaining to conversations had by an unnamed FAA inspector with Mr. King and a pilot named "Scott Breeze" in September 2019 wherein the aircraft is identified as N550ME, suggesting that these entries establish the aircraft was actually registered as N550ME. Pet'r's Br. at 14, 20-21 (citing CR 1204). These records are at most equivocal but ultimately do not support Petitioner's position: While the entries at CR 1204 identify the aircraft as N550ME, entries at CR 1203 from the same period and on October 16, 2019, the day after Petitioner's flights, identify the aircraft as N550MK. Likewise, the entry from September 26, 2019 referenced by Petitioner states that upon Mr. King saying that he was working to get an updated airworthiness certificate despite having already changed the tail number to N550MK, the inspector (1) "advised that prior to having anyone flying his aircraft he must have his registration up to date" and "not to allow

anyone to operate his aircraft unless there is a <u>current</u> registration on board . . . matching the tail number" and (2) subsequently found that the aircraft "has been registered by the owner properly," establishing the aircraft as N550MK with no further entries until after the aircraft had been re-registered as N550ME. CR 1204.

Petitioner did not develop this argument at hearing, and the NTSB correctly found that the compelling evidence and credible testimony presented by the FAA established that the aircraft was registered as N550MK on October 15, 2019. The NTSB's decision factual finding was properly within its discretion to weigh conflicting evidence and is supported by substantial evidence.

Petitioner's argument on this point also improperly ignores his own independent responsibility to assure himself of the aircraft's airworthiness and records prior to operation, a responsibility he is not legally permitted to abdicate or place on another person as an Airline Transport Pilot serving as pilot-in-command. *See infra* Sec. V(B)(5)(b). Petitioner does not suggest he had access to the FAA's Program Tracking and Reporting Subsystem entries prior to conducting the flights on October 15, 2019, and again, was told by FAA inspectors that the aircraft

was registered as N500MK and that he could not operate the aircraft as it was in compliance with FAA regulations.

Petitioner therefore fails to rebut the NTSB's factual finding regarding the registration of the aircraft on October 15, 2019, much less show that the NTSB's finding lacks substantial evidence.

### 5. The NTSB's decision is otherwise in accordance with law.

#### a. Petitioner's "reversion" theory is entirely baseless.

In an effort to thwart application of the FAA's unambiguous regulations, Petitioner again asserts his "reversion" theory, *i.e.*, that, even if the aircraft was registered as N550MK, the aircraft's registration number "reverts" back to its previous number (N550ME) because Mr. King's application for an airworthiness certificate for N550MK was denied. Pet'r's Br. at 7, 14, 23. This theory lacks even a scintilla of support in FAA regulations or in evidence in the record. Instead, substantial evidence in the record establishes that the FAA separately considers, and issues, registration certificates and airworthiness certificates. Substantial evidence supports the NTSB's finding that the aircraft was registered as N550MK at the time of Petitioner's operation of the aircraft on October 15, 2019.

### b. Petitioner failed to establish a reasonable reliance defense.

Finally, Petitioner continues to assert his twice-rejected reasonable reliance defense. The NTSB has recognized and developed "reasonable reliance" as an affirmative defense "applicable in cases 'involving specialized, technical expertise where a flight crew member could not be expected to have the necessary knowledge.'" *Adm'r v. Haddock*, NTSB Order No. EA-5596, 2011 WL 3958427, at *4 (2011) (quoting *Adm'r v. Fay & Takacs*, NTSB Order No. EA-3501, 1992 WL 40523 (1992)). Reasonable reliance is a defense that a pilot may assert only where he has "no independent obligation . . . or ability to ascertain the information." *Fay & Takacs*, NTSB Order No. EA-3501, 1992 WL 40523, at *4.

Petitioner argued below, and before this Court, that he relied on statements from Mr. King prior to the flights at issues that he was not required to resolve the aircraft's lack of a registration certificate matching its displayed tail number, pointing to a letter from the Houston Flight Standards Office which "recommends" that Mr. King correct the aircraft's improper registration rather than state that he "must" do so. Pet'r's Br. at 13-15, 20. One glaring issue with this argument is that, if

Petitioner is telling the truth about his conversation with Mr. King, it suggests he was in fact aware that the aircraft's registration certificate did not match the displayed tail number—after all, why would this be an issue needing correction if this were not the case? Petitioner also mischaracterizes the contents of the FAA's letter, omitting the remainder of the sentence which states that "it is your responsibility to ensure that the aircraft meets all CFR obligations." CR 1119, 1123.

Of course, the FAA's letter "recommend[ing]" that Mr. King correct his aircraft's potential regulatory violation does not amend the violated regulations or obviate Petitioner's independent duty as pilot-in-command to ensure the aircraft's airworthiness and proper registration certification prior to operation. This is particularly the case given that there is no indication that Petitioner himself read the letter, but there is credible evidence that the FAA told Petitioner verbally and in writing not to operate the aircraft. *See* CR 1117-18 (Condition Notice unambiguously instructing Petitioner to not operate the aircraft absent a Special Flight Permit) & Pet'r's Br. at 8 (conceding that he received a verbal warning from the FAA inspectors) The NTSB has long held that, "[a]s a general rule, the pilot-in-command is responsible for the overall safe operation of

36

the aircraft," *Schollmeyer*, NTSB Order No. EA-4422, 1995 WL 623842, at \*2, "which involves ensuring the aircraft is in an airworthy condition prior to and during its operation," *Haddock*, NTSB Order No. EA-5596, 2011 WL 3958427, at \*4.[14] Petitioner's disavowal of this responsibility is contrary to multiple explicit instructions from the FAA inspectors, the plain language of the violated regulations (which place responsibility on the operator of the aircraft), NTSB precedent, and the testimony of Petitioner's own expert witness.[15]

While an owner is responsible for an aircraft's certification with the FAA, here, Petitioner had an independent duty to simply not operate the aircraft until he could locate a current airworthiness certificate and ascertain the aircraft's registration status, and therefore he cannot

---

[14] Petitioner's position is further undercut by his carelessness during his pre-flight checks, admitting that after seeing the only registration and airworthiness certificates for N550ME he stopped looking "even though there [were] other documents in that viewfinder." CR 470.

[15] CR 566 (a pilot-in-command is "basically responsible for what's happening. You're fully responsible"); CR 574 ("[F]irst you got to make sure that the airplane is released to you in an airworthy condition. Usually, the owner/operator is responsible for this, and at that time he'll tell you, 'I give you this airplane, and it's airworthy.' Then as a pilot, you're responsible for then going out and doing an inspection on the airplane, just like the airliners."); CR 575 ("The pilot-in-command can't do nothing on the airworthy registration. He has no authorization or responsibility to try changing it. In fact, they won't let him change because he's not the owner or operator. All he can do is say, 'I don't need to go. We got a problem.'").

legitimately claim reasonable reliance on Mr. King. The NTSB's rejection of his defense was in no way erroneous.

***

The NTSB's finding of the above-described regulatory violations is grounded in substantial evidence in the record and is consistent with the plain language of the regulations at issue. The NTSB considered all of Petitioner's testimony, evidence, arguments, and evidence. The NTSB simply found the FAA's evidence to be more compelling, a decision exclusively within their authority. Likewise, its rejection of Petitioner's reversion and reasonable reliance defenses is fully consistent with long-standing precedent and policy. This Court should deny the petition for review and affirm the NTSB's order finding that Petitioner violated 14 C.F.R. §§ 45.21(a),45.23(a), 91.7(a) and 91.203(a)(1).

## C. The FAA's imposed sanction of suspension of Petitioner's pilot certificate for 150 days is warranted in fact and law

### 1. The FAA calculated its 150-day suspension of Petitioner's pilot certificate under its published sanction guidance.

In determining the appropriate sanction (which the NTSB adopted), the FAA applied FAA Order 2150.3C, which contains the FAA's published sanction guidance, in determining the appropriate sanction in

38

this case. CR 591-93; *see also* CR 272-308 (FAA Order 2150.3C, Ch. 9).[16]

Here, Petitioner operated two flights, flying from Pearland, Texas to Wichita, Kansas and back. A separate violation occurred for each flight. *See* CR 273 (explaining "a separate violation occurs for each day the violation continues or, if applicable, for each flight involving the violation"). The FAA consolidated the multiple violations stemming from each flight (the improper registration and lack of airworthiness certificate) and assessed a single sanction per flight. CR 593.[17]

Order 2150.3C provides that operation of an aircraft with an invalid registration by an operator is a Severity 1 violation, CR 300 (Fig. 9-9-j(3)) (covering 14 C.F.R. §§ 45.21(a), 45.23(a)), and operation when an airworthiness certificate has not been issued is a Severity 2 violation, CR 292 (Fig. 9-9-b(19)) (covering 14 C.F.R. §§ 91.203(a)(1), 91.7(a)). The FAA chose the more severe sanction – Severity 2 – to apply to each flight rather than assessing a sanction for each violation. CR 592-93. Order

---

[16] The FAA consults the sanction guidance tables in Order 2150.3C to ensure that like sanctions are imposed in like cases, and the NTSB regularly takes judicial notice of Order 2150.3C. *See, e.g., Adm'r v. Norwitch*, NTSB Order No. EA-5914, 2021 WL 6286066, at *5-6 (2021).

[17] *See also* CR 273 ("A separate sanction is determined **for each _act_** resulting in a violation. When a single act results in multiple regulatory violations, the FAA ordinarily does not compound the sanction for each violation.") (emphasis added).

2150.3C's sanction matrix recommends a "Moderate" range sanction for a careless Severity 2 violation, and a "High" range sanction for a reckless or intentional Severity 2 violation. CR 275 (Fig. 9-1). While Petitioner's initial flight from Pearland to Wichita was considered careless because he claimed he reviewed the aircraft's certificates in advance but purported to misunderstand their significance, the FAA considered his flight back from Wichita to Pearland to be reckless or intentional given his receipt of both the Condition Notice and verbal warnings by FAA inspectors to not operate the aircraft.[18] *See* CR 274 (providing definitions for careless, reckless, and intentional). Per the Sanction Ranges Table in Figure 9-2, a 60 to 120-day suspension is appropriate for a moderate range violation, and a 90 to 150-day suspension is appropriate for a high range violation. CR 275 (Fig. 9-2 – Individual Certificate Holder). Thus, the total sanction range for Petitioner's two flights is 150 to 270 days.

Typically, the FAA calculates its sanction by beginning at the midpoint of each sanction range and raising the sanction if there are applicable aggravating factors while lowering the sanction if there are

---

[18] *See, e.g., Kowal*, 5 NTSB at 388 (violations were willful once pilot was alerted by FAA officials that aircraft was in violation of the FAR and could not be operated legally unless it displayed the appropriate registration).

mitigating factors. *See* CR 277-80. A respondent to an FAA enforcement action must prove the applicability of any mitigating factors. CR 277-78. Despite Petitioner failing to prove any mitigating factors applied, the FAA used the low end of each of these ranges to assess a combined 150-day sanction for Respondent's two flights, a sanction which the NTSB ultimately affirmed. CR 1303-05; *see also* CR 649-51.

### 2. Petitioner provides no reason to disturb the 150-day suspension affirmed by the NTSB.

"[C]ourts should overturn an agency's choice of remedy only if it 'is unwarranted in law or is without justification in fact.'" *Pham*, 33 F.4th at 583 (quoting *Am. Power & Light*, 329 U.S. at 112–13). The 150-suspension affirmed by the NTSB is both justified in fact and warranted in law.

The FAA proved the facts of the violations alleged, rendering the sanction justified in fact. CR 1304.

The sanction is likewise warranted in law. As demonstrated above, the FAA calculated the applicable sanction ranges for each violative flight pursuant to the strictures of stated sanction guidance in FAA Order 2150.3C, ultimately choosing the lowest end of each range for a total

sanction of 150 days. The NTSB affirmed that determination, and further noted that the FAA's imposed sanction accords with applicable NTSB precedent. *See* CR 1304-05 (citing *Adm'r v. Kowal*, 5 NTSB 387 (1985), and *Adm'r v. Lufker*, 5 NTSB 1303 (1986)).

Petitioner's arguments as to sanction are that a person named "Mr. Breeze" purportedly did not receive a sanction for previously operating the aircraft as N550MK, and that Petitioner's conduct occurred "over five years ago and was truly only an administrative violation." Pet'r's Br. at 23-25. As explained above, Petitioner did not develop any arguments as to flights conducted by "Mr. Breeze" and any corresponding FAA action (or lack thereof). Petitioner did not call Mr. Breeze at hearing or notice a deposition, nor obtain any kind of statement or other evidence from him, nor ask any other witnesses about him and his operation of the aircraft.[19]

Neither the length of time from the initial violation nor the lack of an imminent threat to safety obviate these regulatory violations. Petitioner's conduct took place in October 2019, and the FAA promptly

---

[19] And even if he had, "Mr. Breeze's" alleged circumstances appear materially different: there was no willful disregard of FAA inspectors' verbal warnings and a condition notice.

took enforcement action in April 2020. If Petitioner believed he was unfairly prejudiced by any delay prior to the hearing, he could have asserted a laches defense. He declined to do so.[20] The length of time from Petitioner's violation to review in this Court is not unusual and is irrelevant to the appropriate sanction in this matter.

Finally, the FAA is not limited to only pursuing enforcement action and assessing sanctions as to flights involving an imminent threat to public safety. Contrary to Petitioner's suggestion, Pet'r's Br. at 21, Petitioner's violations should not be mitigated because he operated an aircraft with a registration number that was not identical to, but was "close enough" to the proper registration. Further, neither the courts nor the NTSB have ever accepted a lack of imminent threat to safety as absolving an airman from liability. *See, e.g.*, *Haines v. Dep't of Transp.*, 449 F.2d 1073, 1076 (D.C. Cir. 1971) ("The policy of the regulation would be subverted if its enforcement turned on a *post facto* view of the degree of danger presented."). The FAA can and does bring enforcement actions

---

[20] CR 648 ("With respect to . . . Respondent's assertion that a complaint should be dismissed as stale or barred by the doctrine of laches Respondent presented absolutely no evidence or argument regarding those, and I find no merit in those affirmative defenses.").

where FAA regulations are violated and/or where an airman's compliance disposition is called into question because it "directly bears on his qualifications" and "pilots who exercise the privileges of their certificates in disregard of the regulations lack the care, judgment and responsibility required of certificate holders." *Kowal*, 5 NTSB at 388.

Here, the FAA considered all relevant factors, including mitigating factors, and assessed the lowest possible penalty under its sanction guidance. The FAA's sanction, affirmed by the NTSB, was appropriate. There is no basis for any further downward adjustment.

## VI. Conclusion

For the foregoing reasons, the FAA respectfully requests that the Court deny Petitioners' petition for review and affirm the NTSB's order.

Respectfully Submitted,

/s/Trent Rehusch

Trent Rehusch
Attorney, Aviation Litigation Division

Office of the Chief Counsel
Federal Aviation Administration
800 Independence Avenue SW
Washington, DC  20591

Attorney for Respondent Federal
Aviation Administration

Dated:  September 15, 2025

<u>**CERTIFICATE OF COMPLIANCE**</u>

Pursuant to Fed. R. App. P. 32(a)(7)(B), I hereby certify that the foregoing Brief for Respondent Federal Aviation Administration complies with the typeface and type-volume limitations and contains 8,882 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32.2. This brief further complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionately spaced typeface using Microsoft Word 2024 in 14-point Century Schoolbook.

/s/ Trent Rehusch

Trent Rehusch

Dated:  September 15, 2025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 15, 2025, I electronically filed the foregoing Brief of the Respondent with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Trent Rehusch
Trent Rehusch

Dated: September 15, 2025

**CERTIFICATE OF ELECTRONIC COMPLIANCE**

I hereby certify that, in the foregoing brief filed using the Fifth Circuit CM/ECF document filing system, (1) the privacy redactions required by 5th Cir. R. 25.2.13 have been made, and (2) the document has been scanned for viruses with the most recent version of a commercial virus scanning program, and is free of viruses.

/s/ Trent Rehusch
Trent Rehusch

Dated:  September 15, 2025



**ADDENDA**

# ADDENDA – TABLE OF CONTENTS

Addendum 1 – Pertinent Statutes                    Page

49 U.S.C. § 1153(b)                                2-3
49 U.S.C. § 46110                                  4-5

Addendum 2 – Pertinent Regulations

14 C.F.R. § 45.21                                  7
14 C.F.R. § 45.23                                  8
14 C.F.R. § 91.7                                   9
14 C.F.R. § 91.203(a)                              10

ADDENDUM 1 - Statutes

United States Code
Title 49 - TRANSPORTATION
SUBTITLE II - OTHER GOVERNMENT AGENCIES
CHAPTER 11 - NATIONAL TRANSPORTATION SAFETY BOARD
SUBCHAPTER IV - ENFORCEMENT AND PENALTIES
Sec. 1153 - Judicial review

\* \* \*

(b) Persons Seeking Judicial Review of Aviation Matters.—

(1) A person disclosing a substantial interest in an order related to an aviation matter issued by the Board under this chapter may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business. The petition must be filed not later than 60 days after the order is issued. The court may allow the petition to be filed after the 60 days only if there was a reasonable ground for not filing within that 60-day period.

(2) When a petition is filed under paragraph (1) of this subsection, the clerk of the court immediately shall send a copy of the petition to the Board. The Board shall file with the court a record of the proceeding in which the order was issued.

(3) When the petition is sent to the Board, the court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order and may order the Board to conduct further proceedings. After reasonable notice to the Board, the court may grant interim relief by staying the order or taking other appropriate action when cause for its action exists. Findings of fact by the Board, if supported by substantial evidence, are conclusive.

(4) In reviewing an order under this subsection, the court may consider an objection to an order of the Board only if the objection was made in

the proceeding conducted by the Board or if there was a reasonable ground for not making the objection in the proceeding.

(5) A decision by a court under this subsection may be reviewed only by the Supreme Court under section 1254 of title 28.

* * *

Title 49 - TRANSPORTATION
SUBTITLE VII - AVIATION PROGRAMS
PART A - AIR COMMERCE AND SAFETY
subpart iv - enforcement and penalties
CHAPTER 461 - INVESTIGATIONS AND PROCEEDINGS
Sec. 46110 - Judicial review

(a) Filing and Venue.—
Except for an order related to a foreign air carrier subject to disapproval by the President under section 41307 or 41509(f) of this title, a person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Administrator of the Transportation Security Administration with respect to security duties and powers designated to be carried out by the Administrator of the Transportation Security Administration or the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator of the Federal Aviation Administration) in whole or in part under this part, part B, or subsection (l) or (s) [1] of section 114 may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business. The petition must be filed not later than 60 days after the order is issued. The court may allow the petition to be filed after the 60th day only if there are reasonable grounds for not filing by the 60th day.

(b) Judicial Procedures.—
When a petition is filed under subsection (a) of this section, the clerk of the court immediately shall send a copy of the petition to the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, as appropriate. The Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration shall file with the court a record of any proceeding in which the order was issued, as provided in section 2112 of title 28.

(c) Authority of Court.—
When the petition is sent to the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, the court has exclusive jurisdiction to affirm, amend, modify, or set aside any part of the order and may order the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration to conduct further proceedings. After reasonable notice to the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, the court may grant interim relief by staying the order or taking other appropriate action when good cause for its action exists. Findings of fact by the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration, if supported by substantial evidence, are conclusive.

(d) Requirement for Prior Objection.—
In reviewing an order under this section, the court may consider an objection to an order of the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration only if the objection was made in the proceeding conducted by the Secretary, Administrator of the Transportation Security Administration, or Administrator of the Federal Aviation Administration or if there was a reasonable ground for not making the objection in the proceeding.

(e) Supreme Court Review.—
A decision by a court under this section may be reviewed only by the Supreme Court under section 1254 of title 28.

ADDENDUM 2 – Regulations

Title 14 - Aeronautics and Space.
CHAPTER I - FEDERAL AVIATION ADMINISTRATION,
DEPARTMENT OF TRANSPORTATION (CONTINUED).
SUBCHAPTER C - AIRCRAFT.
PART 45 - IDENTIFICATION AND REGISTRATION MARKING
SUBPART C - NATIONALITY AND REGISTRATION MARKS

§ 45.21 General.

(a) Except as provided in § 45.22, no person may operate a U.S.-registered aircraft unless that aircraft displays nationality and registration marks in accordance with the requirements of this section and §§ 45.23 through 45.33.

(b) Unless otherwise authorized by the FAA, no person may place on any aircraft a design, mark, or symbol that modifies or confuses the nationality and registration marks.

(c) Aircraft nationality and registration marks must—

> (1) Except as provided in paragraph (d) of this section, be painted on the aircraft or affixed by any other means insuring a similar degree of permanence;
> (2) Have no ornamentation;
> (3) Contrast in color with the background; and
> (4) Be legible.

(d) The aircraft nationality and registration marks may be affixed to an aircraft with readily removable material if—

> (1) It is intended for immediate delivery to a foreign purchaser;
> (2) It is bearing a temporary registration number; or
> (3) It is marked temporarily to meet the requirements of § 45.22(c)(1) or § 45.29(h) of this part, or both.

Title 14 - Aeronautics and Space.
CHAPTER I - FEDERAL AVIATION ADMINISTRATION,
DEPARTMENT OF TRANSPORTATION (CONTINUED).
SUBCHAPTER C - AIRCRAFT.
PART 45 - IDENTIFICATION AND REGISTRATION MARKING
SUBPART C - NATIONALITY AND REGISTRATION MARKS

§ 45.23 Display of marks; general.

(a) Each operator of an aircraft must display on that aircraft marks consisting of the Roman capital letter "N" (denoting United States registration) followed by the registration number of the aircraft. Each suffix letter used in the marks displayed must also be a Roman capital letter.

(b) When marks include only the Roman capital letter "N" and the registration number is displayed on limited, restricted or light-sport category aircraft or experimental or provisionally certificated aircraft, the operator must also display on that aircraft near each entrance to the cabin, cockpit, or pilot station, in letters not less than 2 inches nor more than 6 inches high, the words "limited," "restricted," "light-sport," "experimental," or "provisional," as applicable.

Title 14 - Aeronautics and Space.
CHAPTER I - FEDERAL AVIATION ADMINISTRATION,
DEPARTMENT OF TRANSPORTATION (CONTINUED).
SUBCHAPTER F - AIR TRAFFIC AND GENERAL OPERATING
RULES.
PART 91 - GENERAL OPERATING AND FLIGHT RULES.
SUBPART A - GENERAL.

§ 91.7 Civil aircraft airworthiness.

(a) No person may operate a civil aircraft unless it is in an airworthy
condition.

(b) The pilot in command of a civil aircraft is responsible for
determining whether that aircraft is in condition for safe flight. The
pilot in command shall discontinue the flight when unairworthy
mechanical, electrical, or structural conditions occur.

Title 14 - Aeronautics and Space.
CHAPTER I - FEDERAL AVIATION ADMINISTRATION,
DEPARTMENT OF TRANSPORTATION (CONTINUED).
SUBCHAPTER F - AIR TRAFFIC AND GENERAL OPERATING
RULES.
PART 91 - GENERAL OPERATING AND FLIGHT RULES.
SUBPART C - EQUIPMENT, INSTRUMENT, AND CERTIFICATE
REQUIREMENTS.

§ 91.203 Civil aircraft: Certifications required.

(a) Except as provided in § 91.715, no person may operate a civil aircraft
unless it has within it the following:

> (1) An appropriate and current airworthiness certificate. Each
> U.S. airworthiness certificate used to comply with this
> subparagraph (except a special flight permit, a copy of the
> applicable operations specifications issued under § 21.197(c) of
> this chapter, appropriate sections of the air carrier manual
> required by parts 121 and 135 of this chapter containing that
> portion of the operations specifications issued under § 21.197(c), or
> an authorization under § 91.611) must have on it the registration
> number assigned to the aircraft under part 47 or 48 of this
> chapter. However, the airworthiness certificate need not have on
> it an assigned special identification number before 10 days after
> that number is first affixed to the aircraft. A revised airworthiness
> certificate having on it an assigned special identification number,
> that has been affixed to an aircraft, may only be obtained upon
> application to the responsible Flight Standards office.

> (2) An effective U.S. registration certificate issued to its owner or,
> for operation within the United States, the second copy of the
> Aircraft registration Application as provided for in § 47.31(c), a
> Certificate of Aircraft registration as provided in part 48, or a
> registration certification issued under the laws of a foreign
> country.

***